```
 1                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF HAWAII
 2
    UNITED STATES OF AMERICA,      )     Case No. CR02-00223HG
 3                                 )
                     Plaintiff,    )     Honolulu, Hawaii
 4                                 )     May 31, 2002
                                   )
 5            v.                   )
                                   )
 6   OLIVER KUPAU,                 )
                                   )
 7                   Defendant.    )
    ───────────────────────────────)
 8
              TRANSCRIPT OF ARRAIGNMENT, WAIVER OF INDICTMENT,
 9                     ARRAIGNMENT AND PLEA
                 BEFORE THE HONORABLE HELEN GILLMOR
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:           U.S. ATTORNEY'S OFFICE
                                  By:  FLORENCE NAKAKUNI, ESQ.
13                                300 Ala Moana Boulevard, #6100
                                  Honolulu, Hawaii 96850
14
     For the Defendant:           HAYDEN ALULI, ESQ.
15                                707 Alakea Street
                                  Honolulu, Hawaii 96813
16

17

18   Transcriber:                 Jessica B. Cahill
                                  P.O. Box 1652
19                                Wailuku, Maui, Hawaii 96793
                                  Telephone: (808)244-0776
20

21

22

23   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
24

25
26
```

1    THE CLERK:  The United States District Court for the

2  District of Hawaii with the Honorable Helen Gillmor presiding is

3  now in session.

4    Criminal number 00-216 defendant number (08) United

5  States of America versus Oliver Kupau.  This case is called for

6  hearing on defendant's motion to withdraw not guilty plea and to

7  plead anew.

8    MS. NAKAKUNI:  Good morning, Your Honor, Florence

9  Nakakuni and Beverly Wee Sameshima for the United States.  And

10  also with us is FBI Special Agent Ian Young.

11    THE COURT:  Good morning.

12    MR. ALULI:  Your Honor, good morning, Hayden Aluli on

13  behalf of Mr. Oliver Kupau who is present.

14    THE COURT:  Good morning.  Mr. Aluli, if you and your

15  client would approach the lectern?

16    MR. ALULI:  Thank you, Your Honor.

17    THE COURT:  Mr. Kupau, I am told that you wish to

18  enter a guilty plea at this time; is that right?

19    THE DEFENDANT:  Yes.

20    THE COURT:  Before I accept your guilty plea there are

21  a number of questions that I'm going to ask you to make certain

22  that this is a valid and voluntary plea.  If you don't

23  understand my question or if at any time you wish to consult

24  with Mr. Aluli let me know.  It's important that you understand

25  each question before you answer.  Mr. Hisashima, would you swear

1  | the defendant please?

2  |                         OLIVER KUPAU

3  | Was called by the Court and after having been first duly sworn

4  | was examined and testified as follows:

5  |          THE COURT:  Mr. Kupau, do you understand you're now

6  | under oath and if you answer any of my questions falsely your

7  | answers may later be used against you in another prosecution for

8  | perjury or for making a false statement?

9  |          THE DEFENDANT:  Yes.

10 |          THE COURT:  What's your full legal name?

11 |          THE DEFENDANT:  Oliver H. Kupau, III.

12 |          THE COURT:  What's the H for?

13 |          THE DEFENDANT:  Homelani, my middle name.

14 |          THE COURT:  I'm sorry?

15 |          THE DEFENDANT:  Middle name.

16 |          THE COURT:  Yes, you want to spell it for me?

17 |          THE DEFENDANT:  H-O-M-E-L-A-N-I.

18 |          THE COURT:  How old are you?

19 |          THE DEFENDANT:  Forty-five.

20 |          THE COURT:  How far did you go in school?

21 |          THE DEFENDANT:  Twelfth grade graduate, 12 years.

22 |          THE COURT:  Where did you graduate from?

23 |          THE DEFENDANT:  Castle High School.

24 |          THE COURT:  Are you employed?

25 |          THE DEFENDANT:  Yes, I am.

1          THE COURT:  What do you do?

2          THE DEFENDANT:  I'm a business representative for the

3   Laborers Union Local 368.

4          THE COURT:  How long have you done that?

5          THE DEFENDANT:  I've been a member for 27 years, and

6   I've been a business agent, executive board for 12 years now,

7   and a trustee on two pension -- two plans, excuse me, trustee

8   for two other stuffs.

9          THE COURT:  Have you ever been treated for any mental

10  illness or addiction to alcohol or narcotic drugs of any kind?

11         THE DEFENDANT:  No.

12         THE COURT:  Have you taken any drugs, medicines, or

13  pills, or drunk any alcoholic beverage in the past 24 hours?

14         THE DEFENDANT:  No.

15         THE COURT:  Can you tell me briefly what's happening

16  here today?

17         THE DEFENDANT:  I'm here to enter a plea of guilty to

18  my charges.

19         THE COURT:  The Court finds the defendant is competent

20  to understand the proceedings and to enter a knowing plea.

21         Have you had enough time to talk about your case with

22  Mr. Aluli?

23         THE DEFENDANT:  Yes, I did.

24         THE COURT:  Are you satisfied with his representation

25  of you?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you understand that under the

3  Constitution and laws of the United States you're entitled to a

4  trial by a jury on the charges contained in the information?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Now, you have a right to have your case

7  presented to the Grand Jury which consists of not less than 16

8  or more than 23 impartial citizens.  Members of the Grand Jury

9  hear the facts of the case which are presented by the United

10  States Attorney and witnesses.

11        The Grand Jury after hearing the evidence may return a

12  finding of no bill and not issue an indictment.  The finding of

13  no bill indicates the Government has presented insufficient

14  evidence to show probable cause that an offense was committed or

15  that you committed it.

16        The Grand Jury may also return a finding of true bill

17  and issue an indictment indicating the Government has produced

18  sufficient evidence to show probable cause that an offense was

19  committed and that you committed it.  The Grand Jury may issue a

20  finding of true bill and return an indictment with the agreement

21  of 12 or more jurors.  There will have to be at least 12 jurors

22  who agree in order to return an indictment.

23        The Grand Jury usually meets weekly.  You have a right

24  to have your case presented to the Grand Jury.  If you wish

25  though you may waive this right.  If you waive indictment the

1 | charges against you will be presented by the United States

2 | Attorney by way of criminal information.

3 |         Do you wish to have evidence in this case presented to

4 | the Grand Jury or do you wish to waive that right?

5 |         THE DEFENDANT:  I wish to waive all my rights.

6 |         THE COURT:  And have you discussed this with Mr.

7 | Aluli?

8 |         THE DEFENDANT:  Yes, I have.

9 |         THE COURT:  Has he answered your questions about it?

10 |         THE DEFENDANT:  Yes.

11 |         THE COURT:  Have you signed a waiver of indictment

12 | indicating that you agree --

13 |         THE DEFENDANT:  Yes.

14 |         THE COURT:  -- to waive indictment?

15 |         THE DEFENDANT:  Yes.

16 |         THE COURT:  And this is your signature here, Mr.

17 | Kupau?

18 |         THE DEFENDANT:  Yes, it is.

19 |         THE COURT:  And yours, Mr. Aluli?

20 |         MR. ALULI:  Yes, it is, Your Honor.

21 |         THE COURT:  Okay.  At this time, the Court is signing

22 | the waiver of indictment.

23 |         THE CLERK:  Your Honor, the case that was set for this

24 | hearing was the old case, so I called the case under the old

25 | number.  We have new information, so may I just call the case

1  all over to make it (inaudible)?

2          THE COURT:  Okay.  Go ahead and call the case.

3          THE CLERK:  Criminal number 02-223, United States of

4  America versus Oliver Kupau.  This case is called for hearing on

5  arraignment, waiver of indictment, and arraignment and plea.

6          THE COURT:  Now, the attorneys who were present

7  previously and the defendant are -- and the case agent are all

8  present here, and you are in agreement that this is the case

9  number in which we are going to proceed now, counsel?

10          MS. NAKAKUNI:  Yes, Your Honor.

11          MR. ALULI:  That's correct, Your Honor.

12          THE COURT:  Thank you.  Now, with respect to this

13  information, Mr. Kupau, you understand that you are entitled to

14  a trial on the charges contained in the information before a

15  jury?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And you understand that at a trial you

18  would be presumed innocent and the Government has the burden of

19  proving you guilty by competent evidence and beyond a reasonable

20  doubt?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You understand then that you don't have to

23  prove you're innocent, the Government has to prove you guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that you have the right

1    to be assisted by an attorney for your defense?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that you have the right

4    to see and hear all of the witnesses and have them questioned by

5    your attorney?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand you could object to

8    evidence offered by the Government and that you could offer

9    evidence on your own behalf?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you understand that you would have the

12    right to testify at a trial if you chose to?  Do you understand

13    you would have the right to testify at your trial or talk at

14    your trial if you chose to?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Do you understand you also have the right

17    not to testify or not to talk at your trial if you don't choose

18    to?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And you understand that if you decided not

21    to testify or talk at your trial there would be no inference or

22    suggestion of guilt that could be drawn from the fact that you

23    did not testify?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you understand if you enter a plea of

```
 1   guilty and if I accept your plea there will be no trial?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Do you understand you will have waived or

 4   given up your right to a trial as well as the other rights

 5   associated with the trial that we're talking about here?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  You understand that the charge in the

 8   indictment, Count 1, is a felony charge?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  And do you understand if your plea is

11   accepted, and you are judged guilty of that offense that

12   adjudication may deprive you of valuable civil rights such as

13   the right to vote, the right to hold public office, the right to

14   serve on a jury, and the right to possess any kind of firearm?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Are you currently charged with or serving

17   a sentence for a violation of any State law, either State of

18   Hawaii or any other State?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And what charges are they?

21              THE DEFENDANT:  That was for 1998 -- '95, '96 that was

22   a State gambling case.

23              THE COURT:  And you're on probation or what's the

24   situation?

25              THE DEFENDANT:  Yeah, I'm on probation.
```

1          THE COURT:  Pardon?

2          THE DEFENDANT:  Probation five years.

3          THE COURT:  So you're still on probation for that?

4          THE DEFENDANT:  Yeah, I met my person I go to my

5   pretrial, and he told me that November it should be finished

6   already.

7          THE COURT:  Uh-huh.

8          THE DEFENDANT:  Five years, yes.

9          THE COURT:  Okay.  Now, the sentence that you receive

10  for this charge could run consecutively to any sentence you

11  receive in the State charge.  By that I mean the sentences are

12  not necessarily going to be served at the same time.  They may

13  be one after the other rather than you serving them both at the

14  same time.  Do you understand what I'm saying?

15         THE DEFENDANT:  No.

16         THE COURT:  Okay.  If you plead guilty and are found

17  guilty of this charge you will receive some kind of a sentence

18  for it.  I don't know, at this point, what kind of a sentence,

19  but there will be some sort of a sentence if you are adjudged

20  guilty; you understand that part?

21         THE DEFENDANT:  Yeah.  Yes.

22         THE COURT:  Now, you are serving a sentence of

23  probation right now in the State Court.

24         THE DEFENDANT:  Yes.

25         THE COURT:  I don't know whether or not you will just

1    continue to serve probation or whether, because of this

2    conviction, they'll revoke your probation and give you some

3    other sentence, but your sentence right now is probation in the

4    State?

5              THE DEFENDANT:  Yeah.

6              THE COURT:  Whatever sentence you get in this federal

7    charge or if they change your sentence in State court the point

8    I am making is that they don't necessarily have to be served at

9    the same time.  It may be that one sentence will be served after

10   the other.

11             For example, if you got X number of months in prison

12   for this charge, and you had probation maybe it would run after

13   your probation was over in the State charge, or maybe it would

14   run at the same time, or maybe you have X number of months here

15   and the State revokes your probation and gives you X number of

16   months in State prison, and they won't necessarily run at the

17   same time.

18             THE DEFENDANT:  Oh, yeah, okay.

19             THE COURT:  One might come after the other.  That's

20   consecutively.

21             THE DEFENDANT:  Right.

22             THE COURT:  Concurrently means you serve them at the

23   same time.  What I am asking you is whether you understand that

24   the -- the sentence that you receive in this case will not

25   necessarily run at the same time as the sentence in the State

1  case.  Do you understand what I'm saying?

2          THE DEFENDANT:  Yes.

3          THE COURT:  If you plead guilty do you understand you

4  will have waived your right not to incriminate yourself because

5  I will ask you questions about what you did in order to satisfy

6  myself that you are guilty, and you'll have to talk about what

7  you did here today.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  What I'm talking about is in order to

10  plead guilty you're going to have to waive the Fifth.

11          THE DEFENDANT:  What is the Fifth?

12          THE COURT:  Fifth Amendment of, you know, right not to

13  incriminate yourself.  You'll have to talk about what you did

14  today; you understand that?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  The Court finds the defendant understands

17  he has a right to a trial by a jury, the rules of substance and

18  procedure applicable to such a trial, and his plea will be a

19  waiver of his right to a trial, and he is willing to waive his

20  right to trial.

21          We're going to talk about the Sentencing Commission

22  Guidelines.  United States law establishes detailed sentencing

23  guidelines which specify sentences for people convicted of

24  federal crimes.  In most cases, the sentencing judge must impose

25  a sentence within the guideline range.  Before I accept your

1  plea of guilty it's important that you understand certain

2  consequences of these guidelines.  Have you and Mr. Aluli talked

3  about how the Sentencing Commission Guidelines might apply in

4  your case?

5          THE DEFENDANT:  Yes, we have.

6          THE COURT:  Do you understand that I will not be able

7  to determine what guidelines apply to your case today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand we will have to wait

10 until after a presentence report has been completed, and you and

11 the Government have an opportunity to read it and object to

12 anything in it you don't agree with?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that after it has been

15 determined what guidelines apply in a case the judge has the

16 authority in some circumstances to impose a sentence outside the

17 guideline range?  By that I mean the sentence might be worse

18 than the guideline range or better than the guideline range.  Do

19 you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you also understand that under some

22 circumstances you or the Government may have the right to appeal

23 a sentence I impose?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you also understand that parole has

1    been abolished in the federal system and if you're sentenced to

2    prison you will not be released early on parole?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand if the sentence is worse

5    or more severe than you expected you'll still be bound by your

6    plea, and you won't have a right to withdraw it?

7              THE DEFENDANT:  Yes.

8              THE COURT:  The Court finds the defendant understands

9    the requirements of the sentencing guidelines and the plea of

10   guilty is made in accordance with his understanding.  Do you

11   still wish to plead guilty?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Have you received a copy of the

14   information naming you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Have you read it?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Have you discussed it with Mr. Aluli?

19             THE DEFENDANT:  Yes.

20             THE COURT:  The information which was filed on May

21   30th, 2002, reads as follow.

22             Count 1.  The United States Attorney charges that on

23   or about March 31st, 1998, in the District of Hawaii, defendant

24   Oliver Kupau did knowingly and intentionally conduct and attempt

25   to conduct a financial transaction affecting interstate and

1    foreign commerce, to wit, the movement of United States currency

2    which involved the proceeds of a specified unlawful activity,

3    that is an illegal gambling business in violation of Title 18,

4    United States Code, Section 1955.

5            And also that while conducting and attempting to

6    conduct such financial transaction knew that the property

7    involved in the financial transaction represented the proceeds

8    of specified unlawful activity with the intent to promote the

9    carrying on of the specified unlawful activity, to wit, an

10   illegal gambling business in violation of Title 18, United

11   States Code, Section 1955.  All in violation of Title 18, United

12   States Code, Section 1956(A)(1)(a)(i).  Do you understand the

13   charge in Count 1?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Count 2 reads as follows.  The United

16   States Attorney for the charges that (a) as a result of the

17   offense alleged in Count 1, defendant Oliver Kupau shall forfeit

18   to the United States, pursuant to Title 18, United States Code,

19   Section 982(A)(1), any and all property, real or personal,

20   involved in such offenses or any property traceable to such

21   property, including, but not limited, to the following: the sum

22   of money equal to the sum of approximately $5,100; (b) if any of

23   the above described forfeitable property as a result of any act

24   or omission of the defendants (1) cannot be located upon the

25   exercise of due diligence, (2) has been transferred, or sold to,

1  or deposited with a third person, (3) has been placed beyond the

2  jurisdiction of the Court, (4) has been substantially diminished

3  in value, or (5) has been commingled with other property which

4  cannot be subdivided without difficulty, it is the intent of the

5  United States, pursuant to Title 18, United States Code, Section

6  982(B)(1), to seek forfeiture of any other property of the

7  defendants up to the value of the above forfeitable property,

8  all in violation of Title 18, United States Codes, Section 982.

9           I suspect that you wanted that to read defendant?

10          MS. NAKAKUNI:  Yes, Your Honor.  I'm sorry that's a

11  typo.

12          THE COURT:  So, Mr. Aluli, you're in agreement that

13  that should read defendant, singular, in the forfeiture count?

14          MR. ALULI:  Yes, Your Honor.

15          THE COURT:  Okay.  It is orally amended as such.  And

16  this is all in violation of Title 18, United States Code,

17  Section 982, and this information was filed on May 30th, 2000.

18  Do you understand the charge -- the forfeiture charge in Count

19  2, Mr. Kupau?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Now, Mr. Kupau, we're going to turn to the

22  possible sentences for the charges in the information.  Now,

23  with respect to Count 1, do you understand that you can receive

24  up to a maximum term of imprisonment of 20 years, a fine of up

25  to $500,000, and a term of supervised release of not less than

1   three years and up to five years, and $100 special assessment?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And with respect to the forfeiture count,

4   Count 2, do -- do you realize you can have a forfeiture in the

5   amount of $5,100 in cash or in property which constitutes the

6   proceeds of the illegal gambling business, and it's my

7   understanding that the $5,100 is already in the possession of

8   the Federal Bureau of Investigation.  Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand if you were sentenced to

11  prison and released under terms of supervised release you could

12  be given additional time in prison if the judge finds that you

13  have violated the conditions of supervised release?

14           THE DEFENDANT:  Yes.

15           THE COURT:  The Court finds that the defendant

16  understands the nature of the charges to which the plea is being

17  entered.  The maximum possible penalty provided by law, and he

18  understands the requirements of the sentencing guidelines, and

19  the plea of guilty is made in accordance with this

20  understanding.

21           Now, Mr. Kupau, has anybody threatened you or anyone

22  else, or forced you in any way to plead guilty?

23           THE DEFENDANT:  No.

24           THE COURT:  Have you entered into a plea agreement

25  between you and your attorney for the Government?

1          THE DEFENDANT:  Yes.

2          THE COURT:  At this time, Ms. Nakakuni, I would ask

3    that you would describe the essential terms of the plea

4    agreement?

5          MS. NAKAKUNI:  Yes, Your Honor.  The essential terms

6    of our plea agreement with Mr. Kupau are as follows.  Mr. Kupau

7    pleads guilty to the two count information, and he acknowledges

8    he's been charged in a separate indictment.  And we agree to

9    move to dismiss the indictment as to Mr. Kupau after his

10   sentencing.  Mr. Kupau also agrees to the factual basis for his

11   guilty plea which is set out in paragraph eight of this plea

12   agreement.

13         He also agrees to immediately and voluntarily forfeit

14   the $5,100 described in paragraph seven of this plea agreement

15   and to take all necessary actions to implement the forfeiture

16   and pass clear title to the monies to the United States.  He

17   also agrees that the forfeiture of the $5,100 shall not be

18   treated as satisfaction of any fine, reimbursement of cost and

19   imprisonment, or any other monetary penalty this Court may

20   impose upon him.

21         He also waives his right to appeal except under two

22   specific circumstances; one, if this Court should depart upward

23   in the sentencing, or based on a claim of ineffective assistance

24   of counsel.  And Mr. Kupau also agrees on this plea agreement

25   that he will cooperate with the United States and testify

```
 1   truthfully at any and all proceedings in which he is asked to do

 2   so.  And we may move the Court to depart from the guidelines

 3   based on his substantial assistance to us, but Mr. Kupau

 4   understands that the decision as to whether to make such a

 5   motion is entirely up to us and even if we made such a motion

 6   this Court may refuse to depart from the guidelines.

 7             THE COURT:  Thank you, Ms. Nakakuni.  Now, Mr. Aluli,

 8   you've heard what Ms. Nakakuni has outlined as the essential

 9   terms of the plea agreement.  Is there anything that you would

10   like to add or modify?

11             MR. ALULI:  No, Your Honor.

12             THE COURT:  Are you in agreement with the terms of the

13   plea agreement?

14             MR. ALULI:  Yes, I am.

15             THE COURT:  Have you discussed it with Mr. Kupau?

16             MR. ALULI:  Yes.

17             THE COURT:  Do you believe he understands it?

18             MR. ALULI:  I do, Your Honor.

19             THE COURT:  Mr. Kupau, have you read the plea

20   agreement?

21             THE DEFENDANT:  Yes, I have.

22             THE COURT:  Have you talked about it with Mr. Aluli?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Has he answered any questions that you

25   have?
```

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you agree to the terms of the plea

3   agreement?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Have you signed the plea agreement

6   indicating -- showing that you agree to its terms?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Could you point out your signature for me?

9   You're pointing to what page number is that?

10              THE DEFENDANT:  Fourteen.

11              THE COURT:  And that's your signature?

12              THE DEFENDANT:  Yes, it is.

13              THE COURT:  Okay.  Thank you.  Mr. Aluli.

14              MR. ALULI:  Yes, Your Honor.  I would also acknowledge

15   that my signature is below Mr. Kupau's at page 14 of the

16   original memorandum of plea agreement.

17              THE COURT:  Thank you, Mr. Aluli.  If you would

18   provide the document to Ms. Nakakuni?  Thank you.

19              MS. NAKAKUNI:  Yes, Your Honor, those are the

20   signatures of Mr. Enoki, Ms. Sameshima and myself on page 14 of

21   this plea agreement.

22              THE COURT:  Okay.  Thank you.  And now if you would

23   provide it to Mr. Hisashima?  Thank you, Mr. Aluli.  At this

24   time the Court is receiving the plea agreement and

25   making it part of the record.

1                    Now, Mr. Kupau, anybody attempted in any way to force

2    you to plead guilty in this case?

3                    THE DEFENDANT:  No.

4                    THE COURT:  Are you pleading guilty of your own free

5    will because you are guilty?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Do you understand any agreement between

8    Ms. Nakakuni and Mr. Aluli to recommend that a particular

9    sentence to the Court isn't binding on the Court and on the

10   basis of your guilty plea you can receive up to the maximum term

11   permitted?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Do you understand the Court is not

14   required to accept a plea agreement and that I may reject it?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  Has anybody made any prediction, prophesy

17   or promise to you as to what your sentence will be?

18                   THE DEFENDANT:  No.

19                   THE COURT:  I want to be sure that you in fact

20   committed the crimes of which you've been accused and to which

21   you're prepared to plead guilty.  I'm going to ask Ms. Nakakuni

22   to state the facts the Government would be prepared to prove at

23   trial, and then I'm going to ask you to tell me in your own

24   words what you did that makes you guilty of this charge.  Ms.

25   Nakakuni.

1          MS. NAKAKUNI:  Thank you, Your Honor.  If this case

2     did go to trial the United States would offer the following

3     evidence.  First, we would call Honolulu Police Department

4     Detective Earl Kahanui (phonetic) who was the undercover officer

5     in this case, and he would testify to his several face to face

6     meetings with Mr. Kupau as well as his approximately eight or so

7     telephone conversations during the January to April 1998

8     timeframe all occurring here on Oahu.

9          And we would also offer the consensual recordings

10    which were made by Detective Kahanui.  And obviously in

11    particular we would offer the consensual recording on March 31,

12    1998, and at that meeting Mr. Kupau did in fact hand to

13    Detective Kahanui an envelope or bag, I can't remember, but the

14    $5,100, and you can hear the conversation, Detective Kahanui

15    acknowledging receipt of the monies from Mr. Kupau.

16         We would also offer Detective Kahanui's consensual

17    recordings with other individuals who were involved with Mr.

18    Kupau, namely Randolph Mousser and James Mousser.  And these

19    recordings, in addition to the consensual recordings with Mr.

20    Kupau himself would establish that in fact Mr. Kupau did

21    participate in an illegal gambling business, which was

22    cockfighting, and that four or more individuals were involved in

23    the conduct of this business including Mr. Kupau, Mr. Randolph

24    Mousser, Mr. James Mousser, and others, and that it was in

25    substantial continuous operation for more than 30 days, that the

1  activities namely cockfighting and wagering on the outcome of

2  these cockfights were in violation of Hawaii State law.

3          Also we would offer the testimony of Randolph Mousser

4  and James Mousser and, Your Honor, their testimonies as well as

5  the consensual recordings would also establish the interstate

6  and foreign commerce element here namely that the gaffs or

7  knives attached to the legs of the fighting cocks come primarily

8  from outside the State of Hawaii, from the Philippines, and that

9  there were participants from time to time at these cockfights

10  who came into the District of Hawaii from outside the District

11  of Hawaii from other States.

12          And the consensual recording between Detective Kahanui

13  and Mr. Kupau would establish that the monies that Mr. Kupau was

14  giving to the detective were in fact proceeds of gambling and

15  the stated purpose which was for Detective Kahanui to help

16  protect the cockfights.  That would be the evidence, Your Honor.

17          THE COURT:  Thank you.  Now, Mr. Kupau, please tell me

18  in your own words what makes you guilty of Count 1?

19          THE DEFENDANT:  I am pleading guilty, Your Honor,

20  because I did give him the -- the money -- the transaction of

21  the money, and I did fund two derbies.

22          THE COURT:  Okay.  When you say you did give him the

23  money, who did you give the money to?

24          THE DEFENDANT:  Earl.

25          THE COURT:  Earl who?

1          THE DEFENDANT:  Koanui.

2          THE COURT:  And he was the police detective?

3          THE DEFENDANT:  Yes, he was.

4          THE COURT:  And when did this happen?

5          THE DEFENDANT:  I gave 'em to him I think was March

6   31st.

7          THE COURT:  What year?

8          THE DEFENDANT:  '98.

9          THE COURT:  And where did you get the money?

10          THE DEFENDANT:  From the chicken fight.

11          THE COURT:  And was that chicken -- how long did the

12   chicken fight --

13          THE DEFENDANT:  Last?

14          THE COURT:  -- yeah, in terms of the -- not just the

15   one fight, but the operation?

16          THE DEFENDANT:  Maybe -- maybe about -- maybe 24

17   -- maybe one day at the most.

18          THE COURT:  Well, one fight lasted one day, but there

19   were -- there was an ongoing arrangement.  Was there -- was

20   there an ongoing arrangement to have chicken fights over a

21   longer period of time?

22          THE DEFENDANT:  Can I explain about that, Your Honor?

23          THE COURT:  Yes, go ahead.

24          THE DEFENDANT:  Okay.  I ran one in '97, I ran one in

25   '98, and I needed one place, and I went down there, and I -- I

1    rented their place, Randy Mousser and that's what it was.  It

2    wasn't one every day activity.  That's why I kind of like mad

3    about everything, and -- and I gave them money for run -- to use

4    his place, and it was a tribute for my dad.  I know that's

5    illegal, and it was everybody in by seven o'clock in the

6    morning, we started at 12, and got through like maybe two or

7    three o'clock in the morning.  That's what it was, one day

8    event.  Like after was over I gave the people their money, and

9    then I called Earl, and I met Earl, and I gave him the money.

10              THE COURT:  Ms. Nakakuni.

11              MS. NAKAKUNI:  Your Honor, I -- I should have added

12   that the evidence that we would prove would alternatively

13   establish, and if there's some disagreement as to the specific

14   period of time, that this particular gambling opera -- this

15   particular cock fight or gambling operation took in more than

16   $2,000 in any one day.

17              And I think, you know, that evidence would be clear

18   just based on another undercover officer who we had going into

19   the cockfights, and we could establish that for these derbies

20   that Mr. Kupau ran that the number of -- amount -- total amount

21   of wagers placed was in excess of $2,000, and I think Mr. Kupau

22   would agree with that.

23              THE DEFENDANT:  Yeah.

24              THE COURT:  Okay.  Ms. Nakakuni, so rather than the 30

25   day duration, $2,000 gets you under the statute?

1            MS. NAKAKUNI:  Yes, Your Honor.

2            THE COURT:  Okay.  So, Mr. Kupau, in terms of this

3    particular day on March -- was March 31st the day of the chicken

4    fight or was that the day you gave the detective the money?

5            THE DEFENDANT:  The derby was on the 28th, and I -- I

6    make 'em on the day that my dad passed away.  It was a memorial

7    derby, Your Honor.

8            THE COURT:  Uh-huh.

9            THE DEFENDANT:  I met him couple times.

10           THE COURT:  Uh-huh.  Okay.  So on the day of the derby

11   was money made on this derby in excess of $2,000 -- more than

12   $2,000?

13           THE DEFENDANT:  Yeah.

14           THE COURT:  And where was this derby taking place?

15           THE DEFENDANT:  Akima Road, Waianae.

16           THE COURT:  On this Island in the State of Hawaii?

17           THE DEFENDANT:  Yeah.

18           THE COURT:  And the gaffs and -- and other

19   paraphernalia did it come from out-of-state?  Was it

20   manufactured in -- out of the State of Hawaii?

21           THE DEFENDANT:  Well, I -- I don't know anything about

22   the gaffs.  All I know is that a lot of people make over here in

23   Honolulu and even up in the Islands and people buy from people.

24   If came out from this -- I don't know about that.  I don't ask

25   the people where they buy there stuff from.

1          THE COURT:  Okay.  Were there people at this derby who

2    came from outside of the United -- outside of the State of

3    Hawaii?

4          THE DEFENDANT:  Several.

5          THE COURT:  Okay.  You satisfied, Ms. Nakakuni?

6          MS. NAKAKUNI:  Yes, Your Honor.  Thank you.

7          THE COURT:  Okay.  Thank you.  Now, as to Count 2, how

8    much money was in the envelope that you gave to Detective

9    Kahanui?

10         THE DEFENDANT:  I said 5,400 he's saying 5,100.  So he

11   got the badge so I going with 51.

12         THE COURT:  Okay, and where did that money come from?

13         THE DEFENDANT:  From the fight.

14         THE COURT:  Okay, and the fight we've just been

15   talking about?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Okay.  The Court finds that based upon the

18   statements made by the defendant under oath to this Court

19   there's a factual basis upon which the defendant may enter his

20   plea.  How do you plead to the charge, guilty or not guilty as

21   to Count 1?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  And as to the forfeiture count, Count 2?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  Since you acknowledge that you're in fact

1  guilty as charged and since you know of your right to a trial,

2  what the maximum possible punishment is and since you are

3  voluntarily pleading guilty, the Court at this time files the

4  plea agreement, but reserves the determination of whether to

5  accept the plea agreement until after an investigation and a

6  presentence report have been prepared.

7       It's the finding of the Court in the case of United

8  States versus Kupau that the defendant is fully competent and

9  capable of entering an informed plea, that his plea of guilty is

10  a knowing and voluntary plea supported by an independent basis

11  in fact containing each of the essential elements of the

12  offense, and his plea is now accepted, and he is now adjudged

13  guilty of the offense.

14       Now, Mr. Kupau, you're referred to the United States

15  Probation Office for a presentence investigation report prior to

16  sentencing and that will assist the Court at sentencing.  And I

17  ask you to cooperate with the probation officer in giving them

18  information for the report.  And Mr. Aluli may be with you when

19  you speak with the probation officer if you wish to have him

20  there.  Mr. Aluli, have you made an appointment yet?

21       MR. ALULI:  Not yet, Your Honor.

22       THE COURT:  Okay.  If you would go immediately from

23  the Court to the Probation Office to set up an appointment

24  please?

25       MR. ALULI:  Yes, Your Honor, we will.

1          THE COURT:  Thank you.  Now, Mr. Hisashima, may we

2    have a sentencing date please?

3          THE CLERK:  Yes, Your Honor.  It will be on October

4    21, 2002, at 3:00 p.m.

5          THE COURT:  Is that date acceptable to everybody?

6          MS. NAKAKUNI:  Yes, Your Honor.

7          MR. ALULI:  Yes, Your Honor.

8          THE COURT:  Okay.  Now, hearing no motions to the

9    contrary the current orders with respect to bail will remain in

10   effect.  Anything further that we need to take care of?

11         MS. NAKAKUNI:  Nothing further, Your Honor.

12         MR. ALULI:  Nothing further.  Thank you, Your Honor.

13         THE COURT:  Okay.  Thank you.  We stand in recess.

14         (At which time the above-entitled proceedings were

15   concluded.)

16

17

18

19

20

21

22

23

24

25

1

2

3                      CERTIFICATE

4          I, court approved transcriber, certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled matter.

7          Dated this 19th day of May, 2008.

8

9                      /s/ Jessica B. Cahill

10                     Jessica B. Cahill

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25